**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
STATESBORO DIVISION**

KARL C. MITCHELL,

        Plaintiff,

     v.

WARDEN STANLEY WILLIAMS; ROY
SABINE; DOCTOR FNU BROOME; and
GEORGIA DEPARTMENT OF
CORRECTIONS,

        Defendants.

CIVIL ACTION NO.: 6:15-cv-93

## O R D E R

For the reasons and in the manner set forth below, and pursuant to Federal Rule of Evidence 706, the Court **APPOINTS** David C. Whitehead, M.D., of Southeast Georgia Health Systems, Gastroenterology and Hepatology, in Brunswick, Georgia, as an expert to assist the Court in this case. Additionally, the Court apportions the cost of Dr. Whitehead's services to Defendant Georgia Department of Corrections ("DOC") and issues further instructions to the parties to enable Dr. Whitehead to fulfill his role to the Court.

## BACKGROUND

The facts of this case, as currently known, are laid out with specificity in this Court's prior Orders. Generally, Plaintiff is an inmate at Georgia State Prison in Reidsville, Georgia, who was diagnosed with Hepatitis C in March of 2015. Plaintiff brings this action, pursuant to 42 U.S.C. § 1983 and the Americans with Disabilities Act ("ADA"), alleging that Defendants have disregarded his serious medical needs by failing to treat his Hepatitis C.

From the parties' pleadings to date, it appears that Plaintiff has only received minimal, if any, treatment since his diagnosis over a year ago. (Doc. 22.) After being diagnosed in March of 2015, on April 2, 2015, additional blood was collected from Plaintiff to determine his genotype and viral count. (Doc. 22-5, p. 1.) The results of that lab work were reported five days later on April 7, 2015. Id. However, Plaintiff did not have any further tests or treatment for his Hepatitis C until over four months later, on August 20, 2015, when Global Diagnostic Services, Inc., issued a reading of an ultrasound of Plaintiff's abdomen. (Doc. 22-6.) In the eight months since his ultrasound, Plaintiff has not seen a physician regarding his Hepatitis C or received any other tests or treatment. Defendants contend that they are following the DOC's "standardized procedure" for determining if a prisoner with Hepatitis C can be treated with the medication Harvoni. (Doc. 22.) To that end, on February 9, 2016, prison medical providers submitted a request that Plaintiff be scheduled for an appointment with a gastroenterologist. (Doc. 22-7.) However, it does not appear that appointment has been scheduled.

The Court currently has before it Plaintiff's Motion for Preliminary Injunctive Relief, as well as Defendants' Motion to Dismiss for Failure to Exhaust Administrative Remedies. On April 18, 2016, the Court ordered that the Court will hold an evidentiary hearing on these Motions, at a date yet to be set. (Doc. 40.) Additionally, the Court denied Plaintiff's Motion for Appointment of Counsel but reserved ruling on Plaintiff's request for the appointment of an expert. (Id. at p. 9 n.3.)

## DISCUSSION

### I. Need for an Expert Under Federal Rules of Evidence 706 and the Facts of this Case

Federal Rule of Evidence 706 "provides the court with discretionary power to appoint an expert witness either on the court's own motion or the motion of a party." Steele v. Shah, 87

F.3d 1266, 1271 (11th Cir. 1996) (determining that the district court, by failing to give an explanation for its denial of indigent plaintiff's motion to appoint an expert witness, had failed to exercise informed discretion, and requiring, on remand, the district court to reconsider the motion and exercise its discretion in accordance with Rule 706). Moreover, this authority is not limited to criminal cases. <u>Gillentine v. Corr. Med. Servs.</u>, 556 F. App'x 845, 846 (11th Cir. 2014).

In <u>Steele</u>, a case where a prisoner alleged that prison officials failed to provide adequate psychiatric care, the Eleventh Circuit held that the nature of the Plaintiff's claim "warrants consideration of the possible need in order to insure a just resolution of the claim." 87 F.3d at 1271. The Court of Appeals also explained that expert testimony regarding the standard of care would be important to the finder of fact and that, given the plaintiff's indigent status, a court-appointed expert may be necessary to "avoid a wholly one-sided presentation of opinions on the issue." <u>Id.</u>

Based on this precedent and the record of this case, the Court finds appointment of an expert to be not only appropriate but necessary for the just resolution of Plaintiff's claims. Like <u>Steele</u>, this case will involve the standard of medical care, an issue upon which expert testimony will be helpful to the Court and the jury. Additionally, as Defendants point out in their Response, Plaintiff's Motion for a Preliminary Injunction will turn, in part, on whether further delay in Plaintiff's treatment will cause him irreparable injury. (Doc. 22, p. 6.) This question clearly involves issues of scientific and technical knowledge. Likewise, in instances where a deliberate indifference claim turns on a delay in treatment, the factors considered are: "(1) the seriousness of the medical need; (2) whether the delay worsened the medical condition; and (3) the reason for the delay." <u>Goebert v. Lee Cty.</u>, 510 F.3d 1312, 1327 (11th Cir. 2007). Given the

record of unexplained delay in this case, these are questions which the jury and the Court would better approach with the assistance of an expert.  Unlike other cases where the Court can look to a history of medical records to assess the Plaintiff's treatment and condition, in this case, the Court will not have any significant medical records for well over a year's time.

To be clear, the expert will be appointed to assist the Court and the jury, not as an expert working on Plaintiff's behalf.  Further, he will fulfill the roles outlined by Federal Rule of Evidence 706(b).  Additionally, the Court notes that it has not been and will not be the standard practice of this Court to appoint an expert in every case in which an indigent plaintiff claims a denial of medical care or some other issue touching upon scientific, technical, or other specialized knowledge.  Rather, the Court will only appoint experts in civil cases sparingly and only does so in this case based on the unique issues at hand.

## II.     Compensation of Expert

Federal Rule of Evidence 706 provides that an expert is "entitled to a reasonable compensation" and that, in a civil case, the compensation shall be paid by the parties in the proportion and at the time the Court directs.  In Gillentine, the Eleventh Circuit declined to address "the question of 'whether, or under what circumstances' a district court may apportion all of the costs of a court-appointed expert to the non-indigent parties in a lawsuit" and explained that it had not addressed the question previously.  556 F. App'x at 846–47 (citing Young v. City of Augusta, Ga., 59 F.3d 1160, 1170 (11th Cir. 1995)).  Other courts have found that Rule 706 allows for such one-sided apportionment.  See, e.g., Ledford v. Sullivan, 105 F.3d 354, 361 (7th Cir. 1997) ("In this case, when the district court stated that no funds existed to pay for the appointment of an expert, it failed to recognize that it had the discretion to apportion all the costs to one side"); McKinney v. Anderson, 924 F.2d 1500, 1511 (9th Cir. 1991), *vacated and*

*remanded on other grounds*, 502 U.S. 903 (1991) (finding that the phrase "such proportion as the court directs," in an appropriate case, permits the district court to apportion all costs to one side); Webster v. Sowders, 846 F.2d 1032, 1038–39 (6th Cir. 1988) ("A District Court has authority to apportion costs under this rule [706(b)], including excusing impecunious parties from their share").

This Court is in agreement with these decisions and their underlying rationale. The text of Rule 706 provides the district court with discretion to determine the amount of the expert's fee and the percentage of apportionment between the parties. Moreover, limiting the Court's ability to appoint experts to only those cases where both parties can contribute to the experts' fees would place a constriction on Rule 706 that is not found in the text or the rationale of the Rule. In fact, to the contrary, the Eleventh Circuit has stated that the indigence of one party may compel the Court to utilize Rule 706. Steele, 87 F.3d at 1271 ("If, as he claims, [the plaintiff] is indigent, this could provide further reason to appoint an expert to avoid a wholly one-sided presentation of opinions on the issue.").

Furthermore, the Court finds that the facts of this case warrant apportioning all of the expert's fees to Defendant DOC. Apportionment to the DOC is not merely warranted by the disparity in resources amongst the parties but also by the relationship between the parties and the status of this case. Given Plaintiff's incarcerated status, the DOC is already financially responsible for his medical care. In fact, prison officials have ostensibly attempted to schedule Plaintiff for an appointment with a gastroenterologist but have been unable to do so. Thus, they already plan to pay for a gastroenterologist, such as the expert, to review Plaintiff's case. Further, given that Plaintiff has not seen a physician in over a year concerning his Hepatitis C, it is not unreasonable to have the DOC pay for the expert to review Plaintiff's treatment.

Moreover, in order to reduce the costs to the DOC, at the conclusion of this Order, the Court instructs Defendants to obtain information for the expert's review rather than having the expert gather that information and then charge his costs to the DOC.

## III. Appointment of David Whitehead

In light of the foregoing, the Court hereby **APPOINTS** David C Whitehead, M.D., of Southeast Georgia Health Systems, Gastroenterology and Hepatology, in Brunswick, Georgia, as an expert in this case. Dr. Whitehead will review Plaintiff's condition and medical records and will offer opinions, only to the extent he is able, on the following issues: (1) Plaintiff Karl Mitchell's history of treatment; (2) whether any delay in Mr. Mitchell's treatment was medically necessary or appropriate; (3) whether any delay in Mr. Mitchell's treatment worsened his medical condition(s) or symptoms; (4) what is the proper and medically acceptable future course of treatment for Mr. Mitchell; (5) whether any further delay in treating Mr. Mitchell could cause him any injury or worsening of his conditions or symptoms; and (6) any other matter or opinion that Dr. Whitehead discovers or forms pertinent to Mr. Mitchell's condition and treatment that he feels necessary to reveal to the Court.

To enable Dr. Whitehead to fulfill his role to the Court, the Court **ORDERS** Defendants to provide the following medical information to the Court within **twenty-one days** of the date of this Order. As laid out above, the Court directs Defendants, rather than Dr. Whitehead or his associates, to obtain this information in an effort to reduce the costs to the DOC. In addition, given Plaintiff's incarcerated status, allowing Defendants to obtain and provide this information will alleviate concerns of security and logistics. However, should Defendants be unable or

unwilling to obtain this information, the Court will make provision for this information to be collected by other means.[1]  The information to be provided is as follows:

- Plaintiff's entire medical file;

- A medical summary of Plaintiff's condition provided by a physician or nurse practitioner;

- An updated physical exam.  The performing provider should comment, in addition to standard observations, on the presence of striae, ascites, jaundice, icteric sclerae, or asterixis, if present, and the presence or absence of hepatosplenomegaly or muscle wasting;

- Updated laboratory work that reveals the following:

    o Hepatitis C viral load,

    o Hepatitis C genotype,

    o PT/INR,

    o CMP,

    o CBC with differential,

    o Hepatitis BsAb,

    o Hepatitis BsAg,

    o Hepatitis A antibody total or IgG,

    o HIV 1 and 2,

    o Urine drug screen,

    o AFP,

---

[1]  Dr. Whitehead states that this information is medically necessary to evaluate Mr. Mitchell's condition and his course of treatment and that obtaining this information comports with the standard of care.  Thus, the DOC would have to obtain this information already if they are scheduling Mr. Mitchell to be examined by a gastroenterologist.

- o  Iron,

- o  TIBC,

- o  Ferritin, and

- o  Ceruloplasmin;

- An updated ultrasound of the liver with dopplers performed by a radiology department; and

- A fibrosure liver scan or equivalent in order to assess how advanced Mr. Mitchell's liver disease has progressed.

As stated above, Defendants shall provide this information to the Court within **twenty-one days** of the date of this Order.  Given the patently sensitive nature of this information, Defendants shall file this information **UNDER SEAL**.  The Court hereby **DIRECTS** the Clerk of Court to accept Defendants' submission for filing, to file the documents under seal, and to maintain these records under seal until further Order of the Court.  Defendants shall provide a service copy of their pleading to Plaintiff.

Following the provision of this information to Dr. Whitehead, he will review this information and provide a written report to the Court addressing the issues laid out above.  The Court will provide a copy of Dr. Whitehead's report to Plaintiff and Defendants.  Along with his report, Dr. Whitehead may provide an invoice, which the Court will review and then direct Defendant DOC to pay Dr. Whitehead his reasonable compensation for services rendered in this case.

## CONCLUSION

For the reasons and in the manner set forth above, and pursuant to Federal Rule of Evidence 706, the Court **APPOINTS** David C. Whitehead, M.D., of Southeast Georgia Health

Systems, Gastroenterology and Hepatology, in Brunswick, Georgia, as an expert to assist the Court in this case.

**SO ORDERED**, this 25th day of April, 2016.

_____
R. STAN BAKER
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA